FILED
MAR 23 2004
ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. IMTEC CORPORATION, | ) | |
| Plaintiff, | ) ) ) | CIV-04-0348-M |
| vs. | ) | |
| 1. INTRA-LOCK INTERNATIONAL, Inc., | ) | |
| 2. THIERRY M. GIORNO, DDS | ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff IMTEC Corporation ("IMTEC"), for its causes of action against Defendants alleges and states as follows:

1. IMTEC is a corporation formed under the laws of the State of Oklahoma having its principal place of business in the State of Oklahoma.

2. Thierry M. Giorno, DDS ("Giorno") is a citizen of France.

3. Intra-Lock International, Inc. ("Intra-Lock") is a corporation formed under the laws of the State of Florida having its principal place of business in the State of Florida. Giorno and Intra-Lock are collectively referred to herein as "Defendants".

### JURISDICTION AND VENUE

4. This is an action for violation of the Lanham Act, 15 U.S.C. § 1125. This is also an action for breach of contract, theft of trade secrets, breach of fiduciary duty and interference with business/contractual relations and related conspiracies. Subject matter jurisdiction for the Lanham Act claim exists pursuant to 28 U.S.C. § 1331. This Court has jurisdiction based on diversity of citizenship pursuant to 12 U.S.C. § 1332(a), as the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Supplemental jurisdiction is also proper for the state claims pursuant to

00032814.DOC

28 U.S.C. § 1367(a) because the claims set forth are so related that they form part of the same case or controversy.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d).

## BACKGROUND

IMTEC incorporates by reference the allegations set forth in paragraphs 1-5 above and states further:

6. IMTEC is engaged in the design, testing, manufacture and sale of dental devices including the IMTEC Sendax Mini Dental Implant System and related insertion method (collectively the "MDI") throughout the United States and the world.

7. Since on or before 1999, IMTEC has sold dental implant systems, equipment and services under the trademark MDI. There is substantial goodwill associated with IMTEC's mark throughout the state of Oklahoma, the United States and the world.

8. Since on or before 1995, IMTEC has sold dental implant systems, equipment and services under the trademark IMTEC. There is substantial goodwill associated with IMTEC's mark throughout the state of Oklahoma, the United States and the world.

9. As between IMTEC and Defendants, IMTEC has trademark priority and is entitled to protection under the Lanham Act, Oklahoma statutes and common law for the marks MDI and IMTEC.

10. The IMTEC trademarks MDI and IMTEC have become well known to, and easily recognized by, the public as designating IMTEC's goods and services. The marks are distinctive and famous.

11. Giorno is a dentist who acted as a consultant to IMTEC and who became a director of IMTEC in 1998. During his tenure as a director of IMTEC, Giorno became familiar with all aspects of the development, manufacture and marketing of the MDI in the United States and abroad. As

part and parcel of his duties as a director of IMTEC and his involvement in the development and marketing of the MDI, on April 9, 1998, Giorno entered into a Confidential Proprietary Rights & Confidential Non-Disclosure Agreement with IMTEC (the "Confidentiality Agreement"). Pursuant to the terms of the Confidentiality Agreement, Giorno was bound to maintain the confidentiality of IMTEC's trade secrets and confidential proprietary information.

12.  During his tenure as a director of IMTEC and thereafter, Giorno engaged with at least two (now former) executive level employees of IMTEC (the "Former Executives") and others, in a willful campaign to misappropriate IMTEC's trade secrets and other confidential proprietary information, all in an effort to create a new entity that would compete against IMTEC. The Former Executives, like Giorno, are bound by a confidentiality agreement that prohibits their use and dissemination of IMTEC's trade secrets and other confidential proprietary information.

13.  Unbeknownst to IMTEC, on or about April, 2002, Giorno along with the Former Executives and others, incorporated Intra-Lock. Using IMTEC's trade secrets, concepts, marketing approaches, designs and other confidential proprietary information owned by IMTEC, and stealing the MDI's design and method of use, Intra-Lock sometime in mid-2003 began to manufacture and market a product it named the MDL (the "Imitation Product"). MDL is purportedly an acronym for "Mini Drive-Lock", but in reality it is a term designed for the purpose of confusing the dental community and the public and causing them to believe that the MDL is actually the MDI.

14.  Since the formation of Intra-Lock, Giorno, Intra-Lock and others have aggressively marketed the Imitation Product in competition against the MDI. As part and parcel of Defendants' marketing efforts, Defendants, along with others, have engaged in a deliberate course of market disparagement against IMTEC and the MDI, as well as a deliberate course of market tactics designed to confuse the dental profession as to the distinctions between the MDI and the Imitation Product, all

with the aim of robbing IMTEC of market share while using IMTEC's trade secrets, concepts, marketing approaches, designs and other confidential proprietary information to achieve illicit gain.

15. As part and parcel of their illicit goals, Defendants approached several IMTEC distributors for the purpose of inducing them to terminate their binding distributorship agreements with IMTEC and to cause them to begin marketing the Imitation Product.

## CAUSES OF ACTION

### Count I. Violation of Lanham Act

IMTEC incorporates by reference the allegations set forth in paragraphs 1-15 and states further:

16. By using the mark MDL as well as IMTEC, Defendant has infringed IMTEC's trademarks and unfairly competed with IMTEC's in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

17. Defendant's use of the mark MDL is deceptive and has caused confusion in the marketplace.

18. Defendants have used in commerce false designations of origin and false or misleading descriptions of fact in connection with the sale of or the promotion of their business and their products, which is likely to and has caused confusion, or to cause mistake or to deceive as to affiliation, connection or association of IMTEC and/or its principals and products, or as to the origin, sponsorship or approval of IMTEC's and/or its representatives' services or commercial activities. Defendants have additionally engaged in a pattern and practice of falsely disparaging IMTEC's products and reputation. Defendants' activities constitute unfair competition in violation of the Lanham Act.

19. The foregoing activities have injured IMTEC's ability to fairly compete, have resulted in profits to and unjustly enriched the Defendants and/or their representatives, have caused damage

to IMTEC's business and reputation, and have caused other damage including, but not limited to, lost profits and related costs and expenses in amounts to be proven at trial.

20. The conduct of Defendants and/or their representatives has caused and will continue to cause irreparable injury to IMTEC unless restrained by this Court.

21. Defendants' actions were and continue to be in bad faith, willful and are in conscious or reckless disregard of the rights of IMTEC such that this is an exceptional case for which IMTEC is entitled to treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

### Count II. Common Law Unfair Competition

IMTEC incorporates by reference the allegations set forth in paragraphs 1-21 and states further:

22. The foregoing activities have injured IMTEC's ability to compete, have resulted in illicit profits to and unjustly enriched Defendants, have caused injury to IMTEC's business and reputation, and have caused other damage including but not limited to lost profits and other related costs and expenses in amounts to be proven at trial.

23. Defendants' conduct has caused and will continue to cause irreparable injury to IMTEC unless restrained by this Court.

24. Defendants' use of the confusingly similar mark MDL infringes IMTEC's rights in the mark MDI, is a false designation of origin, injures IMTEC's business reputation, and results in unfair competition, all in violation of the common law of the State of Oklahoma, OKLA. STAT. tit. 78 § 33.

25. By virtue of Defendants' use of the confusingly similar mark MDL, IMTEC is entitled to injunctive relief.

26. Defendants willfully engaged and continue to engage in common law unfair competition, have acted in bad faith and in conscious or reckless disregard of the rights of IMTEC

for which IMTEC is entitled to attorneys' fees and costs, as well as exemplary damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### Count III. Tortious Interference with Contract and Prospective Business Advantage of IMTEC

IMTEC incorporates by reference the allegations set forth in paragraphs 1-26 and further states:

27. Defendants have maliciously and wrongfully, without justification, privilege, or excuse, interfered with the existing business rights and prospective economic advantages of IMTEC. Defendants' interference is malicious and wrongful and is not justified, privileged or excusable.

28. IMTEC has been damaged by the Defendants' interference in an amount to be proven at trial.

29. Defendants willfully engaged in tortious interference with IMTEC's existing and prospective business relationships, acted in bad faith and in conscious or reckless disregard of the rights of IMTEC for which IMTEC is entitled to punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### Count IV. Breach of Fiduciary Duty

IMTEC incorporates by reference the allegations set forth in paragraphs 1-29 and further states:

30. As a director of IMTEC, Giorno owed IMTEC a fiduciary duty.

31. Giorno's acts against IMTEC, as set forth in this Complaint, constitute breaches of Giorno's fiduciary duty towards IMTEC, for which IMTEC is entitled to recover damages.

32. Giorno violated and continues to violate, in conscious or reckless disregard of the rights of IMTEC, the fiduciary duty owed to IMTEC for which IMTEC is entitled to an award of punitive damages against him pursuant to OKLA. STAT. tit. 23, § 9.1.

## Count V.  Breach of Contract

IMTEC incorporates by reference the allegations set forth in paragraphs 1-32 and further states:

33. Giorno entered into the Confidentiality Agreement with IMTEC that requires Giorno to maintain in confidence all trade secrets and other confidential proprietary information about IMTEC and IMTEC's products and methods.

34. Giorno has breached the terms of the Confidentiality Agreement and, as a result, IMTEC has sustained damages for which IMTEC is entitled to recover.

## Count VI.  Affirmative Fraud

IMTEC incorporates by reference the allegations set forth in paragraphs 1-35 and further states:

36. While serving as a director of IMTEC, during the period from 1998 through 2001 (including specifically May 5, 2001), Giorno requested and obtained from IMTEC trade secrets and other confidential proprietary information (such as the torque tolerances of new and experimental products) purportedly for the purpose of advancing IMTEC's business. In obtaining such trade secrets and other confidential proprietary information from IMTEC, Giorno misrepresented to IMTEC the reasons why he wanted to obtain such materials by telling IMTEC and/or intentionally leading IMTEC to believe that he was seeking such trade secrets and other confidential proprietary information to advance IMTEC's business interests. In reality, Giorno induced IMTEC to provide him with the information at issue not to advance the business of IMTEC, but to advance the separate and competing business interests of Defendants. IMTEC did not discover Giorno's fraud until mid-2003.

37. Giorno's misrepresentations were known by Giorno to be false when made, were material, and were designed to cause IMTEC to rely upon them.

38. IMTEC did in fact rely upon Giorno's misrepresentations, to its detriment.

39. Giorno's conduct towards IMTEC constitutes fraud and fraudulent inducement upon IMTEC for which IMTEC is entitled to recover actual damages.

40. IMTEC is entitled to an award of punitive damages against Giorno pursuant to OKLA. STAT. tit. 23, § 9.1 as a result of Giorno's fraud and fraudulent inducement.

## Count VII. Fraudulent Concealment

IMTEC incorporates by reference the allegations set forth in paragraphs 1-40 and further states:

41. While serving as a director of IMTEC, during the period from 1998 through 2001, Giorno requested trade secrets and other confidential proprietary information from IMTEC (such as the torque tolerances of new and experimental products) purportedly for the purpose of advancing IMTEC's business. In reality, Giorno induced IMTEC to provide him with the information at issue not to advance the business of IMTEC, but to advance the separate business interests of Defendants.

42. Giorno had a duty to disclose to IMTEC the real reason why he was seeking the information at issue, but failed to so disclose. Giorno's intent to use the information for the benefit of Defendants was material and he hid said intent from IMTEC with the intent of creating a false impression of the actual facts and with the further intent of causing IMTEC to act.

43. IMTEC did in fact act in reliance upon Giorno's fraudulent concealment.

44. Giorno's conduct towards IMTEC constitutes fraudulent concealment upon IMTEC for which IMTEC is entitled to recover actual damages.

45. IMTEC is entitled to an award of punitive damages against Giorno pursuant to OKLA. STAT. tit. 23, § 9.1 as a result of Giorno's fraudulent concealment.

### Count VIII. Conversion of Trade Secrets

IMTEC incorporates by reference the allegations set forth in paragraphs 1-45 and further states:

46. Defendants stole multiple trade secrets and confidential proprietary information owned by IMTEC and have made use of those trade secrets and confidential proprietary information for their own illicit gain. These acts include, without limitation, the theft of IMTEC's specifications and designs for a certain product that is described in Patent Applications filed by Giorno and published on the United States Patent and Trademark Office website under Publication Numbers 2004/0018471 and 2003/0228556, and further filed by applicant Intra-Lock and Giorno in the published international application number WO 03/103530 submitted through the Patent Cooperation Treaty, all of which claim inventorship of a torque wrench technique and smooth collar actually developed by one of IMTEC's principals, Dr. Ron Bulard, and disclosed to Giorno in strict confidence during his tenure and due to his status as Director of IMTEC.

47. Defendants' acts constitute conversion for which IMTEC is entitled to recover actual damages.

48. In effecting their conversion of IMTEC's trade secrets and confidential proprietary information, Defendants acted in bad faith and in conscious or reckless disregard of the rights of IMTEC for which IMTEC is entitled to punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### Count IX. Conspiracy to Tortuously Interfere with Contract and Prospective Business Advantage of IMTEC

IMTEC incorporates by reference the allegations set forth in paragraphs 1-48 and further states:

49. Giorno, along with Intra-Lock and others, maliciously and wrongfully, without justification, privilege, or excuse, conspired to interfere and have interfered with the existing business rights and prospective economic advantages of IMTEC.

50. IMTEC has been damaged by the conspiracy in an amount to be proven at trial.

51. Defendants willfully engaged in a conspiracy among them and with others to tortuously interfere with IMTEC's existing and prospective business relationships. Such conspiracy was and is in conscious or reckless disregard of the rights of IMTEC for which IMTEC is entitled to punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### Count X. Conspiracy to effect a Breach of Fiduciary Duty

IMTEC incorporates by reference the allegations set forth in paragraphs 1-51 and further states:

52. As a director of IMTEC, Giorno owed IMTEC a fiduciary duty.

53. Giorno, along with Intra-Lock and others, entered into a conspiracy to steal IMTEC's trade secrets and other confidential proprietary information by improperly using Giorno's position as a fiduciary of IMTEC to obtain said trade secrets and other confidential proprietary information.

54. As a result of said conspiracy, Giorno did breach his fiduciary duty to IMTEC, for which IMTEC is entitled to recover damages.

55. Defendants willfully engaged in a conspiracy among them and with others to breach Giorno's fiduciary duties to IMTEC. Such conspiracy was and is in conscious or reckless disregard of the rights of IMTEC for which IMTEC is entitled to punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### Count XI. Conspiracy to Defraud

IMTEC incorporates by reference the allegations set forth in paragraphs 1-55 and further states:

56. Giorno, along with Intra-Lock and others, entered into a conspiracy to commit upon IMTEC the frauds set forth in Counts VI and VII of this Complaint.

57. As a result of said conspiracy, IMTEC sustained and is entitled to recover damages.

58. Defendants willfully engaged in a conspiracy among them and with others to defraud IMTEC. Such conspiracy was and is in conscious or reckless disregard of the rights of IMTEC for which IMTEC is entitled to punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### Count XII. Conspiracy to Convert Trade Secrets

IMTEC incorporates by reference the allegations set forth in paragraphs 1-59 and further states:

60. Giorno, along with Intra-Lock and others, entered into a conspiracy to convert IMTEC's trade secrets and confidential proprietary information.

61. As a result of said conspiracy, IMTEC's trade secrets and confidential proprietary information have in fact been converted and IMTEC has sustained and is entitled to recover damages.

62. Defendants willfully engaged in a conspiracy among them and with others to convert IMTEC's trade secrets and confidential proprietary information. Such conspiracy was and is in conscious or reckless disregard of the rights of IMTEC for which IMTEC is entitled to punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### Count XIII. Violation of Oklahoma's Unfair and Deceptive Trade Practices Act

IMTEC incorporates by reference the allegations set forth in paragraphs 1-62 and further states:

63. By using the mark MDL and IMTEC, Defendants have violated the Oklahoma Deceptive Trade Practices Act, OKLA. STAT. tit. 78, § 53, *et seq*.

64.     Defendants' use of the confusingly similar mark MDL constitutes a misappropriation of IMTEC's reputation, goodwill, business opportunities, and revenues.

65.     Defendants' use of the mark MDL is likely to cause confusion, or mistake, or to deceive as to the source of origin of Defendants' goods and services.

66.     By using the mark MDL, Defendants have reproduced, counterfeited, copied, and colorably imitated IMTEC's registered mark and applied the reproduction, counterfeit, copy, and colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale or other distribution of goods and services in the State of Oklahoma, all in violation of OKLA. STAT. tit. 78, § 53, *et seq.*

### Count XIV.  Unjust Enrichment

IMTEC incorporates by reference the allegations set forth in paragraphs 1-66 and further states:

67.     The illicit activities of Defendants have resulted in Defendants receiving gains and profits at IMTEC's expense. Theses gains and profits constitute unjust enrichment which Defendants may not retain.

### PRAYER FOR RELIEF

68.     WHEREFORE, IMTEC requests judgment in its favor and against Defendants as follows:

A.      That Defendants pay actual damages in an amount determined at trial, which damages include, without limitation, Defendants' profits, trebled pursuant to 15 U.S.C. § 1117 (b), in an amount to be determined.

B.      That Defendants pay punitive damages as requested above in an amount determined at trial.

C. That Defendants be temporarily and then permanently enjoined from any and all conduct that constitutes unfair competition.

D. That Defendants be ordered to pay to IMTEC all unjust enrichment derived from their illicit activities.

E. That the Defendants and their agents, employees, and all other persons, firms, or corporations acting or claiming to act on their behalf, or in concert with them, be restrained, enjoined, and prohibited from using the mark MDL or any name or logo substantially similar to the MDI mark, either alone or in combination with other works or symbols, as a part of any trademark, service mark, trade name, corporate name, or in any other manner associated with any business products and services relating to Defendants' business, or the products or services Defendants sell or otherwise provide in the United States.

F. That Defendants be required to destroy all labels, signs, materials, and advertisements in the possession or control of Defendants in the United States bearing any name or logo substantially similar or otherwise likely to be confused with the MDI Mark, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, and other articles by means of which such items can be made.

H. That Defendants serve upon the Court and IMTEC, within ten (10) days after the entry of an injunction, a written report under oath setting forth in detail the manner in which Defendants have complied with the injunction.

I. That Dr. Ron Bulard be declared to be the inventor of those certain inventions published on the United States Patent and Trademark Office website under Publication Numbers 2004/0018471 and 2003/0228556, and further ordering Defendants and any assignee assign and grant complete ownership to IMTEC of Patent Applications filed by Giorno and published on the United States Patent and Trademark Office website under Publication Numbers 2004/0018471 and

2003/0228556, and further filed by applicant Intra-Lock and Giorno in the published international application number WO 03/103530 submitted through the Patent Cooperation Treaty, all of which claim inventorship of a torque wrench technique and smooth collar developed by Dr. Ron Bulard and disclosed to Giorno during the tenure and status as Director of IMTEC.

J.   That Defendants be required to pay IMTEC the costs of this case and reasonable attorneys' fees.

K.   That IMTEC be granted such other and further relief as this Court deems just in law and equity.

Respectfully submitted,

_____
Fred A. Leibrock
Martin Ozinga
Patricia L. Franz
Jennifer Miller
PHILLIPS McFALL McCAFFREY
  McVAY & MURRAH, P.C.
12th Floor-One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-4100
Facsimile:  (405) 235-4133
faleibrock@phillipsmcfall.com

*and*

Derrick W. Harvey
HARVEY CONSULTING, P.L.L.C.
P.O. Box 6568
Norman, Oklahoma  73072
Telephone: (580) 220-9374
derrick@harveyip.com

**Attorneys for Plaintiff IMTEC Corporation**

**JURY TRIAL DEMANDED**